Slip Op. 12-98

# UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |  |
|---|---|---|
| AMS ASSOCIATES, INC., d/b/a SHAPIRO PACKAGING, | : | |
| Plaintiff, | : | |
| v. | : | Before: R. Kenton Musgrave, Senior Judge |
| UNITED STATES, | : | Court No. 11-00101 |
| Defendant, | : | |
| and | : | |
| LAMINATED WOVEN SACKS COMMITTEE, COATING EXCELLENCE INTERNATIONAL, LLC, and POLYTEX FIBERS CORPORATION, | : | |
| Defendant-Intervenors. | : | |

**OPINION AND ORDER**

[Denying as moot plaintiff's claim that the Department of Commerce violated its regulations in instructing Customs to suspend liquidation of certain entries of certain laminated sacks from the People's Republic of China, and denying plaintiff's request for remand to determine a new dumping margin.]

Dated: July 27, 2012

   *Lizbeth R. Levinson* and *Roland M. Wilsa*, Kutak Rock LLP, Washington, DC, for plaintiff.

   *Tara K. Hogan*, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, DC, for defendant. With her on the brief were *Tony West*, Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Reginald T. Blades, Jr.*, Assistant Director. Of counsel on the brief was *Rebecca Cantu*, Attorney, Office of Chief Counsel for Import Administration, U.S. Department of Commerce.

*Joseph W. Dorn* and *Jeffrey B. Denning*, of *King & Spaulding*, Washington, DC, for defendant-intervenors.

**Musgrave, Senior Judge**: In this case, the U.S. Department of Commerce, International Trade Administration ("Commerce") investigated the country of origin of products not previously subject to antidumping duties and found them to be within the scope of an existing antidumping order. Plaintiff claimed that in doing so Commerce selectively applied its regulations and improperly ordered the retroactive suspension of liquidation of Plaintiff's entries. However, in the interim, the affected entries were liquidated in due course, and there appears no *res* remains affected by the complained of actions by Commerce. For the reasons explained below, Plaintiff's request that the court remand the results of the administrative review for a redetermination of the applicable margin is denied.

### *I. Facts*

Commerce found that laminated woven sacks from the People's Republic of China ("PRC") were being dumped in *Laminated Woven Sacks from the People's Republic of China*. 73 Fed. Reg. 45941 (Aug. 7, 2008) ("LWS Order"). The scope of the LWS Order was defined in part as "bags or sacks consisting of one or more plies of fabric consisting of woven polypropylene strip and/or polyethylene" that are "laminated to an exterior ply of plastic film or to an exterior ply of paper that is suitable for high quality print graphics." LWS Order, 73 Fed. Reg. at 45942.

In September, 2009, Commerce undertook an administrative review of the LWS Order for the period January 31, 2008 through July 31, 2009 ("Period of Review"). During the review petitioners Laminated Woven Sacks Committee ("LWSC") requested that Commerce

investigate how respondent Zibo Aifudi Plastic Packaging Co., Ltd. ("Aifudi") determined whether merchandise was subject to the LWS Order due to concerns that not all of Aifudi's production of LWS was being included in the information provided to Commerce.[1]  At issue were sacks made in the PRC by Aifudi from fabric that originated elsewhere.  Commerce investigated the origin of the Aifudi sacks made with non-PRC origin fabric within the ongoing administrative review.  Despite requests by Aifudi, Commerce chose not to initiate a formal scope inquiry under 19 C.F.R. § 351.225.

Aifudi argued to Commerce that a country-of-origin ruling it obtained from U.S. Customs and Border Protection ("CBP") provided an adequate basis for its decision not to include sacks made with non-PRC-origin fabric.  *See* HQ N08508, dated May 27, 2008.  Pursuant to that ruling, Aifudi declared a non-PRC origin for LWS made with non-PRC origin fabric.  As a result, those LWS entries were not subject to antidumping deposits upon entry.

Commerce determined pursuant to a substantial transformation analysis that the PRC was the country of origin of the Aifudi LWS.  *Preliminary Decision Regarding the Country of Origin of Laminated Woven Sacks Exported by [Aifudi]*, (May 25, 2010) ("Preliminary Decision"), Tab 7 to Pl's Appx.  Based upon this finding, Commerce then issued a "clarification" of its liquidation instructions to CBP.  Commerce Instructions to CBP dated July 23, 2010 ("Clarification"), Tab 8 to Pl's Appx.  Commerce instructed CBP to "continue to suspend liquidation of all LWS from the PRC, regardless of the origin of the woven fabric, that is entered,

---

[1] *See* letter from King & Spalding commenting on respondent's questionnaire responses, dated December 18, 2009, attached as Tab 3 to Appendix to Plaintiff's Memorandum of Points and Authorities in Support of Plaintiff's 56.2 Motion for Judgment on the Agency Record ("Pl's Appx.").

or withdrawn from warehouse, for consumption, on or after January 31, 2008." Clarification at 2. Plaintiff argued here the effect of the Clarification was to retroactively suspend liquidation of and collect cash deposits on all entries of Aifudi sacks made since January 31, 2008.[2] However, by the time this instruction was transmitted to Customs, all affected entries within the period of review had apparently already liquidated in due course.[3]

In March, 2011, Commerce issued the final results of the LWS administrative review.[4] During the administrative review, Commerce had preliminarily found that Aifudi's antidumping margin was equal to 0.68% in its preliminary results of the administrative review. *Laminated Woven Sacks from the People's Republic of China: Preliminary Results of Antidumping Administrative Review*, 75 Fed. Reg. 55568 (September 13, 2010) ("Preliminary Results"). Shortly thereafter, Aifudi withdrew from the administrative review and requested that all business confidential data that it had submitted be destroyed. *See* Sept. 20, 2010 letter from Ronald Wilsa to Sec. of Commerce, Tab 10 to Pl's Appx. In its place, Shapiro Packaging, the related-party importer of Aifudi's sacks, entered its notice of appearance before Commerce. Commerce stated in the Final Results that because Aifudi withdrew its confidential submissions, "the Department does not have any record evidence upon which to determine whether [Aifudi] is eligible for a separate rate for the review period." Final Results, 76 Fed. Reg. at 14,909.

---

[2] Plaintiff's Memorandum in Support of its 56.2 Motion for Judgment on the Agency Record ("Pl's Memo"), at 7 n. 4.

[3] Following a request by the court, the parties have stipulated that they were unable to identify any entry of LWS made from non-PRC origin fabric that remains unliquidated, despite Commerce's Clarification instruction. *See* Joint Response to Court's Order dated June 26, 2012.

[4] *Laminated Woven Sacks from China: Final Results of First Antidumping Duty Administrative Review*, 76 Fed. Reg. 14906 (March 18, 2011) ("Final Results").

Commerce used adverse facts available as the basis for treating Aifudi as part of the China-wide entity in the final results of the administrative review with a margin of 91.73%, chosen as "the highest rate from any segment of this proceeding". *Id*.

## *II. Arguments Presented*

Plaintiff AMS Associates, Inc., d/b/a Shapiro Packaging ("Shapiro") argues that Commerce violated its own regulations by ordering CBP to retroactively suspend liquidation of LWS entries and collect estimated antidumping duties on shipments entered prior to the initiation of the scope review. Pl's Memo at 12. Shapiro argues that Commerce should not have applied the China-wide rate of 91.73% to imports of Aifudi LWS. Although Shapiro does not contest the application of adverse facts available due to Aifudi's withdrawal of its confidential business information, Shapiro argues that the remaining public information is sufficient to support a finding that Aifudi was not state-controlled. Plaintiff's Reply Brief ("Pl's Reply") at 11. Because Commerce failed to consider this information, Shapiro argues, the matter should be remanded for reconsideration. *Id*.

Shapiro also takes issue with Commerce's statement in the Final Results that "the Department does not have any record evidence upon which to determine whether [Aifudi] is eligible for a separate rate". Final Results, 76 Fed. Reg. at 14,909. Shapiro contends that adequate information proving Aifudi's lack of government control exists in the public record and was ignored by Commerce. Pl's Reply at 11. Shapiro requests that the court remand the case to Commerce for determination of an AFA rate other than the China-wide margin. *Id*.

The government argues that Commerce's actions were proper because the agency has the right to determine whether to launch a formal scope inquiry or to investigate scope issues

as part of an administrative review. Defendant's Memorandum in Opposition to Plaintiff's Rule 56.2 Motion for Judgment on the Agency Record ("Def's Memo") at 9. On the second issue, the government argues that Aifudi failed to demonstrate its qualifications for a separate rate. Commerce reasonably found that its preliminary determination (based upon the later-withdrawn confidential information) was no longer supported by the record and the evidence provided by Shapiro was insufficient to prove Aifudi's eligibility for a separate rate. Def's Memo at 10.

Petitioner LWSC argues that Commerce did not illegally expand the scope of the orders and that Commerce had previously used the substantial transformation analysis within an administrative review. LWSC's Response to Shapiro's Rule 56.2 Memorandum In Support of its Motion for Judgment on the Agency Record ("LWSC's Resp.") at 13-16. LWSC argues that Shapiro's separate rate argument should be dismissed due to failure to exhaust its administrative remedies. *Id*. at 3. Alternatively, LWSC argues that because Aifudi prevented Commerce from verifying the information that supported its preliminary determination, it should suffer the consequences of Commerce's denial of a separate rate in the final results.

### *III. Standard of Review*

This court upholds a determination by Commerce unless it is "unsupported by substantial evidence on the record or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(I); *NSK Ltd. v. United States*, 510 F.3d 1375, 1379 (Fed. Cir. 2007). As explained in *E.I. DuPont de Nemours & Co. v. United States*, 22 CIT 370, 373, 8 F. Supp. 2d 854, 857 (1998) (some citations omitted):

> In determining whether Commerce's interpretation and application of the antidumping statute is in accordance with law, this court applies the two-step analysis articulated in *Chevron U.S.A., Inc. v. Natural Resources Defense*

*Council, Inc.*, 467 U.S. 837, 842-3, 104 S.Ct. 2778 (1984), as applied and refined by the Federal Circuit. The first task is 'to determine whether Congress has 'directly spoken to the precise question at issue.'' *Id*. If the statute unambiguously deals with the subject matter in issue, the court, as well as the agency, must give effect to the intent of Congress. *Id*.

'If the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.' *Chevron*, 467 U.S. at 843, 104 S.Ct. 2778. Considerable weight is accorded Commerce's construction of the antidumping laws, whether that construction manifests itself in the application of the statute, [citations omitted] or in the promulgation of a regulation [citations omitted].

"In order to effectuate review of the reasonableness of agency action, '[c]ourts look for a reasoned analysis or explanation for an agency's decision as a way to determine whether a particular decision is arbitrary, capricious, or an abuse of discretion.'" *U.S. Steel Corp. v. United States*, 621 F.3d 1351, 1357 (Fed. Cir. 2010), quoting *Wheatland Tube Co. v. United States*, 161 F.3d 1365, 1369 (Fed. Cir. 1998). An abuse of discretion occurs where the decision is based on an erroneous interpretation of the law, on factual findings that are not supported by substantial evidence, or represent an unreasonable judgment in weighing relevant factors. *Star Fruits S.N.C. v. United States*, 393 F.3d 1277, 1281 (Fed. Cir. 2005).

### *IV. Scope Inquiry and Suspension of Liquidation Claims*

Shapiro's arguments regarding the LWS scope inquiry and suspension of liquidation are moot. The affected entries, if there ever were any, have all apparently liquidated at their original duty rate, unaffected by the allegedly *ultra vires* actions by Commerce. For this reason, the court dismisses that portion of Shapiro's complaint relating to the scope inquiry and Commerce's retroactive instructions suspending entries because no *res* over which the court has jurisdiction remains.

*V. Adverse Facts Available Analysis*

In non-market economy cases, Commerce presumes state control over respondents' export operations. *Sigma Corp. v. United States*, 117 F.3d 1401, 1404-05 (Fed. Cir. 1997). Respondents subject to the presumption are subject to the country-wide rate unless they affirmatively demonstrate an absence of both *de jure* and *de facto* government control over the company's exports. *Id*. at 1405, *see also* Def.'s Memo at 24, *citing Silicon Carbide from the PRC*, 59 Fed. Reg. 22,585, 22,586-87 (Dept. of Commerce May 2, 1994) (Final Determination). Respondents must provide information regarding corporate structure, ownership, affiliations with other entities and their export sales negotiation process. Def.'s Memo at 24-25 (citations omitted).

In its papers, Shapiro points to record evidence that supports its contention that Aifudi is not a government-controlled entity. Pl's Memo, at 27-28. Shapiro requests a remand to Commerce for a "redetermination". Pl's Memo, at 28. Shapiro argues that Commerce should be ordered to "determine an AFA rate for Aifudi other than the China-wide margin". Pl's Reply at 14. But Shapiro has not convinced the court that there remains sufficient information in the record to permit Commerce to determine a separate rate for Aifudi, now that Aifudi's confidential information has been removed. Shapiro has likewise failed to point to a viable alternate rate that Commerce should use in preference to the PRC-wide rate that has already been selected. For these reasons the court must deny Shapiro's request for a remand.

*VI. Conclusion*

Plaintiff's claims that Commerce violated its regulations in performing a country of origin scope inquiry during the administrative review, and illegally suspended liquidation of

Shapiro entries of LWS with countries of origin other than the PRC are moot and are hereby dismissed.

The court hereby sustains Commerce's decision to apply adverse facts available to Aifudi and as a result the PRC-wide rate to its imports of LWS during the review period. Judgment will enter accordingly.

SO ORDERED.

      /s/ R. Kenton Musgrave

      R. Kenton Musgrave, Senior Judge

Dated: July 27, 2012

    New York, New York

# UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| AMS ASSOCIATES, INC., d/b/a SHAPIRO PACKAGING, | : : : |
| Plaintiff, | : : |
| v. | : : |
| UNITED STATES, | : : |
| Defendant, | : : |
| and | : : |
| LAMINATED WOVEN SACKS COMMITTEE, COATING EXCELLENCE INTERNATIONAL, LLC, and POLYTEX FIBERS CORPORATION, | : : : : |
| Defendant-Intervenors. | : |

Before: R. Kenton Musgrave, Senior Judge
Court No. 11-00101

**JUDGMENT**

This action having been duly submitted for decision, and the court, after due deliberation, having rendered a decision herein; now, therefore, in conformity with said decision, it is

**ORDERED, ADJUDGED and DECREED** that this action is hereby dismissed.

SO ORDERED.

                                              /s/ R. Kenton Musgrave
                                              R. Kenton Musgrave, Senior Judge

Dated: July 27, 2012
      New York, New York